### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **THOMAS DAM,** | ) | **CASE NO. 8:04CV175** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **LIFE INSURANCE COMPANY OF** | ) | |
| **NORTH AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

This matter is before the Court on the Motion for Summary Judgment filed by the Defendant, Life Insurance Company of North America, Inc. ("LINA") (Filing No. 22). The issues have been fully briefed. (Filing Nos. 23, 29, and 30). For the reasons set forth below, I conclude that the Defendant is entitled to summary judgment as a matter of law.

### Factual Background

At all times relevant to this action, Plaintiff Thomas Dam was employed by ConAgra, Inc. (Filing No. 24, Ex. B, p. 236).[1] Dam participated in the ConAgra Life Plan (the "Plan") through which ConAgra offered several types of insurance to its employees. (p. 491). The Life Plan included Accidental Death and Dismemberment (AD&D) Insurance. LINA issued a group policy for AD&D coverage to ConAgra, policy number OK822765, and LINA administers claims for benefits under that policy. (pp. 01-21; 510). The AD&D policy is administered according to the provisions of the Group Policy. (p. 510).

---

[1] Exhibit A1, identified as LINA 1 - LINA 514, is the Administrative Record upon which LINA relied in denying Dam's claim. (Filing No. 24, Ex. A, Townsend Aff. ¶6). Citation to Exhibit A1 hereafter will be solely by page number.

On February 2, 2001,[2] Dam, after giving his informed consent, underwent a cataract extraction surgery of his left eye.  (pp. 40-41, 121-22).  Within 24 hours, Dam developed a bacterial infection that caused the loss of his eyesight in his left eye.  On May 22, 2001, Dam filed a claim for benefits under the AD&D policy claiming that the loss of his eyesight was a covered loss under the policy.  Dam's ophthalmologist, Ira Priluck, M.D., provided medical support for the claim, stating that in his opinion Dam's loss of eyesight in his left eye was entire and irrecoverable, and that it was due to an accident.  He also stated that the surgery was not considered a cause.  (p. 105).

LINA retained a physician, James L. Adams, M.D., to review Dam's medical file and to provide an expert medical opinion regarding causation.  In Dr. Adams's opinion, a bacterial infection can occur even where there are no known breaks in sterile technique, and he did not attribute Dam's bacterial infection to an "accident." (p. 326-27).  Rather, Dr. Adams explained that Dam suffered a "complication" from surgery.  A "complication" is defined in medical literature as "a morbid (disease) process or event occurring during a disease that is not an essential part of the disease, although it may result from it or from independent causes." *Stedman's Medical Dictionary* at 391 (27th ed. 2000).

On October 16, 2001, Dam's claim for benefits under the Plan's AD&D policy was denied.  The product specialist for LINA, Eleanor Mendicino, concluded on October 16, 2001, that because the cut that caused the bacterial infection was not an accident, but rather was a surgical procedure, the cut was intentional.  Accordingly, she determined that the bacterial infection could not be found to be "accidental" under the policy

---

[2] Page 40 is dated by Dam as 2-2-00, although the date noted by the hospital indicates it was dated in the year 2001.

language. (p. 298-300).  Thereafter, Dam provided CIGNA with another opinion from Dr. Priluck dated November 20, 2001, in which he opined that Dam suffered the bacterial infection as a result of an accident.  In correspondence dated December 6, 2001, CIGNA addressed Dr. Priluck's opinion, and again denied the claim.  (pp. 295-97).  This denial was reaffirmed in correspondence from CIGNA dated May 29, 2002, and September 26, 2002. (pp. 44-45; 28-30).

Neither the Plan Summary nor the LINA policy defines "accident."  (See pp. 1-24, 509).  The policy states, in relevant part, that it covers "loss from bodily injuries" "a) caused by an accident which happens while an insured is covered by this policy; and b) which, directly and from no other causes, resulted in a covered loss."  (p. 1).  The policy also contains exclusions, one of which states, "No benefits will be paid for loss resulting from: . . . sickness, disease, or bodily infirmity."  (p. 3).  The so-called "sickness" exclusion is followed by this exception: "Bacterial infection resulting from an accidental cut or wound or accidental ingestion of a poisonous food substance are not excluded."  (p. 3).

## Summary Judgment Standard of Review

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Philip v. Ford Motor Co.*, 328 F.3d 1020, 1023 (8th Cir. 2003).  The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The proponent need not, however, negate the opponent's claims or defenses.  *Id.* at 324-25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249-50 (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

## Jurisdiction and Preemption

### *ERISA*

An "employee welfare benefit plan," is defined as a "plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A)

4

medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability or death . . . " 29 U.S.C. § 1002(1)(A).  The term plan "administrator" means "the person specifically so designated by the terms of the instrument under which the plan is operated" or "if an administrator is not so designated, the plan sponsor." 29 U.S.C. § 1002(16)(A).  An entity is "a fiduciary with respect to a plan" if it expressly so-designated, or if it "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets," or "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. §1002(21)(A)(I) & (iii); *and see* § 1105(c)(1).

### *Jurisdiction*

LINA removed this case from the District Court of Sarpy County, Nebraska, on April 4, 2004.  Two jurisdictional bases for removal were identified in LINA's Notice of Removal. First, LINA contends that Dam's claims are controlled by federal law, specifically the Employee Retirement Income Security Act,  29 U.S.C. §§ 1001- 1461 ("ERISA"), because ERISA preempts any state law claims raised in the Petition.  Second, LINA contends that even if ERISA does not apply, this Court has jurisdiction based on the parties' diverse citizenship and the amount in controversy under 28 U.S.C. § 1332. I conclude that the Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1332.

### **Preemption**

LINA's first argument in support of its motion for summary judgment is that the state law claims raised in Dam's Petition are preempted by ERISA.  The Petition alleges a claim

based on breach of contract in Count I and a claim based Plaintiff's "reasonable expectations" in Count II, both of which challenge LINA's denial of benefits under the AD&D policy. (Filing No. 1). Both claims arise from Dam's status as an insured under the AD&D policy, and his allegations that the loss of his eyesight in his left eye should be covered under the policy. Even if I were to assume that Count II states a claim upon which relief can be granted under Nebraska law, I conclude these state law claims are preempted by ERISA.

In *Daley v. Marriott Intern., Inc.*, 415 F.3d 889, 894 (8th Cir. 2005), the Eighth Circuit Court of Appeals reiterated the policy reasons supporting preemption in the regulation of employee welfare plans, stating:

> "ERISA comprehensively regulates employee pension and welfare plans." *Baxter v. Lynn*, 886 F.2d 182, 184 (8th Cir.1989). "To meet the goals of a comprehensive and pervasive Federal interest and the interests of uniformity with respect to interstate plans, Congress included an express preemption clause in ERISA for the displacement of State action in the field of private employee benefit programs." *Wilson v. Zoellner*, 114 F.3d 713, 715-16 (8th Cir.1997) (internal quotations omitted). Accordingly, ERISA broadly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by ERISA. 29 U.S.C. § 1144(a).

The Eighth Circuit Court recently explained the necessary relationship between state claims and an employee benefit plan to trigger ERISA's preemption provisions.

> "[S]tate law claims are preempted if the claims "relate to" an employee benefit plan, 29 U.S.C. § 1144(a), such that they "[1] ha[ve] a connection with or [2] reference to such a plan." *Howard v. Coventry Health Care, of Iowa, Inc.,* 293 F.3d 442, 446 (8th Cir. 2002) (*quoting California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.,* 519 U.S. 316, 324, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997)). We have also stated a claim relates to an ERISA plan when it "premises a cause of action on the existence of an ERISA plan." *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr.,* 154 F.3d 812, 822 (8th Cir. 1998).

*Estes v. Federal Express Corp.*, 417 F.3d 870, 872 (8th Cir. 2005). Because I find that the state law claims raised in Dam's petition are premised on the existence of an ERISA welfare benefit plan, of which the AD&D policy is a part, and because those claims would not survive absent the Plan, I conclude that Dam's state law claims are preempted by ERISA.

I am not persuaded by Plaintiff's argument that ERISA does not apply because the benefits are allegedly due under the terms of an insurance policy. ERISA-governed employee-benefit plans may be self-funded or funded by insurance policies. *See, i.e., Johnston v. Paul Revere Life Ins. Co.*, 241 F.3d 623, 626-27 (8th Cir. 2001). The Eighth Circuit Court of Appeals has recognized that "[o]ften . . . insurance is purchased to fund an employer's ERISA plan." *Molasky v. Principal Mut. Life Ins. Co.*, 149 F.3d 881, 884 (8th Cir. 1998). That is the case here.

Nor am I persuaded by Plaintiff's argument that his claims are exempt from ERISA pursuant to ERISA's savings clause, which saves to the States power to regulate the insurance industry. *See* 29 U.S.C. § 1144(b)(2). State common law, which provides the foundation for causes of action such as breach of contract, constitutes law of general application that may have some bearing on insurers but does not qualify as "being directed toward the insurance industry." Without such direction, the savings clause does apply. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987); *Kuhl v. Lincoln Nat. Health Plan*, 999 F.2d 298, 3030 (8th Cir. 1993). I have considered the McCarran-Ferguson[3] factors, and

---

[3] As stated in *Metropolitan Life*, the McCarran-Ferguson Act sets forth three factors courts should consider: "'first, whether the practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry." ' *Id.* at 743.

7

I conclude that neither common sense nor those factors warrant holding that Plaintiff's state law claims regulate insurance.  *See UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 367 (1999) (holding that a state law may be found to regulate insurance under a "common-sense view of the matter," or if the law falls within the reference to the business of insurance in the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.* citing *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 742-43 (1985).  Based on these authorities, I conclude that the Plaintiff's claims are not the kind of claims intended by Congress to be saved pursuant to 29 U.S.C. § 1144(b)(2)(A).

## ERISA Standard of Review

The Supreme Court has declared that a court should conduct a de novo review to a denial of benefits challenge, unless the benefit plan grants to the plan administrator or to the fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.  *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989).  When a plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits, then the decisions are reviewed for an abuse of discretion.  *Id.*  In this case, the Plan Summary states that "[t]he accidental death and dismemberment plan is administered according to the provisions of Group Policy OK822765, issued by CIGNA."   (p. 510).  Defendant LINA is a CIGNA company.  While an insurer does not become a "fiduciary" under ERISA by routinely handling claims, *see Kerns v. Benefit Trust Life Ins. Co.*, 992 F.2d 214, 216 (8th Cir.1993), when an insurer also retains the right to review the denial of coverage or benefits (rather than delegating that review to another, for example, the Plan Administrator), then the insurer "shall be the 'appropriate named fiduciary' for purposes of this section."  *Id.* at § 2560.503-1(g)(2).  *See Molasky v. Principal Mut. Life Ins. Co.* 149

F.3d 881, 884 (8th Cir. 1998).  *See also Prudential Ins. Co. of America v. Doe*, 140 F.3d 785, 789 (8th Cir. 1998) (distinguishing Kerns because Prudential's "obligations and involvement in handling the . . . claims include substantial discretion.")  Because CIGNA retained the right to review its denial of benefits, it is a fiduciary under ERISA. (*Id.*, and pp. 295-97, 44-45, 28-29).  I conclude that LINA is a fiduciary of an ERISA plan, because it has the authority to exercise authority, control, or responsibility with respect to the plan, and I shall review the fiduciary's decision for an abuse of discretion.[4]

Dam argues that a less deferential standard should apply based on an alleged conflict of interest and procedural irregularity, but I find no proof of such conditions in the record.  Dam vaguely references the insurer's financial disincentive to approve a claim, but Dam provides no evidence to create a genuine issue of material fact with regard to this suspicion.  The "procedural irregularity" referenced by the Plaintiff is based on Plaintiff's assumption that his medical evidence was not fully considered, for if it had been, then his claim would not have been denied.  The only "proof" of his allegation is that the insurer reached a different conclusion than did Dr. Priluck on whether Dam's loss was caused by a "covered accident." (See p. 262).  Plaintiff's unsupported arguments fail to demonstrate the need for a heightened standard of review.  Accordingly, this Court will review the denial of benefits to Dam using an abuse of discretion standard.

Under an abuse of discretion standard, a plan administrator's decision will stand if reasonable, even if the Court disagrees with the interpretation.  *Hebert v. SBC Pension Benefit Plan*, 354 F.3d 796, 799 (8th Cir. 2004).  A decision is reasonable if it is "supported

---

[4] Even if the standard of review were *de novo*, the same result would obtain based on the analysis contained herein.

9

by substantial evidence.*" Fletcher-Merrit v. NorAm Energy Corp.*, 250 F.3d 1174, 1179 (8th Cir. 2001)(*quoting Donaho v. FMC Corp.*, 74 F.3d 894, 899 (8th Cir. 1996)). "Substantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (*quoting Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Neumann v. AT & T Communications, Inc.* 376 F.3d 773, 781 -782 (8th Cir. 2004).

**Analysis**

The Plan Administrator's decision to deny Dam's claim is based on its interpretation of the policy. The Plan Administrator stated:

> Although the cause of your loss of vision was determined to be bacterial, the record indicates that your surgery was done in the usual sterile manner and it appears that reasonable action was taken to remove bacteria from the ocular area. There is nothing in the record to indicate that anything abnormal occurred which would have exposed you to bacteria. Nor is there any . . . indication of an accidental cut or wound from which the infection developed. Infection is a known risk [of] surgery and can occur even with known breaks [sic] in sterile technique . . .   As a result of our review, we have determined that your loss of sight was not the result of accidental injury or of bacterial infection resulting from an accidental cut or wound.

(p. 282).

Dam's position, corroborated by Dr. Priluck in his correspondence to LINA dated November 20, 2001, is that Dam's left-eye blindness is a direct result of "the accidental intraocular infection which occurred during cataract surgery." (p. 287).  In his brief, Dam argues that Dr. Priluck's opinion that the bacterial infection was caused by an accident is reasonable, and that Priluck's causation opinion brings Plaintiff's claim within the coverage of the AD&D policy.

The question before this Court is whether the interpretation of the contract and denial of coverage for Dam's loss, which was caused by a bacterial infection following a

10

surgical procedure, is reasonable. I conclude that it is reasonable, as explained briefly below.

Dr. Adams and Dr. Priluck seem to agree that Dam's bacterial infection is a disease that Dam would not have contracted except for his decision to have the cataract surgery. Plainly, Dam would not have suffered the bacterial infection had it not been for the surgery. Drs. Priluck and Adams agree that the surgery itself went as expected. Neither doctor can pinpoint the cause of Dam's bacterial infection, but rather, they simply characterize the infection as an "accident" or a "complication." Given the airborne characteristics of some bacteria, their inability to state a specific cause is not surprising.

Because bacterial infection is a disease and because diseases are not covered under the policy pursuant to the "sickness" exclusion, there is no coverage for Dam's loss under the AD&D policy unless it can fit into the exception to the "sickness exclusion." The exception applies only when a loss is caused by a bacterial infection that is the result of an accidental cut or wound. (p. 3).

A "wound" is defined as: "1. Trauma to any of the tissues of the body, especially that caused by physical means with interruption of continuity. 2. A surgical incision." *Stedman's Medical Dictionary* at 1990 (27th ed. 2000). There has been no allegations, and there is no proof, that any cut or wound that was made to Dam's body during the cataract surgery was "accidental." Dam executed an Authorization for and Consent to Surgery that contains an acknowledgment of risks or serious complications from both known and unknown causes. (p. 40). Based on this record, I conclude that the exception to the

11

exclusion, for bacterial infections resulting from accidental cuts or wounds, does not apply to Dam's loss, and the denial of AD&D benefits under the Plan was reasonable.

Certainly no one "intended" for Dam to lose the sight in his left eye, and in that sense it was "accidental," but that simply is not sufficient to transform his loss into a covered loss under the Plan's policy. I conclude that the Plaintiff has failed to show that bacterial infection resulted from an accidental cut or wound. I also conclude the construction of the exception – that "cut" and "wound" are both modified by "accidental" – is reasonable. Because the cause of Dam's bacterial infection is not known; because it is known that bacterial infection can occur where there are no known breaks in the sterile technique; and because it is known that bacterial infection was a known risk of the cataract surgery and Dam signed the Consent to Surgery knowing that there were risks and complications to the surgery; I conclude that the insurer's denial of the claim reflects a reasonable interpretation of the sickness exclusion and its exception to the policy. Accordingly, I will grant summary judgment in Defendant's favor on all claims.

For all these reasons,

IT IS ORDERED:

1. The Defendant's Motion for Summary Judgment (Filing No. 22) is granted; and

2. A separate judgment shall be entered.

DATED this 24th day of October, 2005.

BY THE COURT:

s/Laurie Smith Camp  
United States District Judge